**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| **SHARON GREEN,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No. EDCV08-00796 AJW** |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OF DECISION** |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. In a May 24, 2006 written hearing decision that constitutes the Commissioner's final decision in this case, an administrative law judge (the "ALJ") found that plaintiff had a severe impairments consisting of a generalized anxiety disorder with panic attacks. [JS 2; Administrative Record ("AR") 17]. The ALJ found that plaintiff retained the residual functional capacity ("RFC") for work at all exertional levels, and

that she had nonexertional limitations restricting her to moderately complex tasks in a habituated setting, with no responsibility for the safety of others, no rapid pace work, and no operation of hazardous machinery (but she could be around hazardous machinery). [AR 18]. The ALJ concluded that although plaintiff's RFC precluded her from performing her past relevant work as a school bus driver, she could perform alternative jobs existing in significant numbers in the national economy. [AR 22].

**Statement of Disputed Issues**

The disputed issues are whether: (1) the Appeals Council properly considered the additional evidence from plaintiff's treating therapist; (2) the ALJ properly evaluated the credibility of plaintiff's subjective complaints; (3) the ALJ properly evaluated the written statement of a third-party lay witness; and (4) the ALJ properly considered the type, dosage, and side effects of plaintiff's prescribed medications. [JS 2-3].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Appeal Council's consideration of additional evidence**

Plaintiff contends that the Appeals Council erred by failing specifically to "consider, discuss, analyze or even mention" a "Work Capacity Evaluation" form signed by Gabriele E. Roberts, LMFT (licensed marriage and family therapist) on July 10, 2006. [JS 3-8].

1  Plaintiff submitted Roberts's evaluation along with his request for review to the Appeals Council,
2  which denied plaintiff's request in a written "Notice of Appeals Council Action" ("Notice") dated
3  September 15, 2006. [AR 7-19]. The Notice states that the Appeals Council "considered the additional
4  evidence listed on the enclosed Order of Appeals Council," but that "this information does not provide a
5  basis for changing the [ALJ's] decision." [AR 7-8]. The order lists Roberts's "check-the-box" evaluation
6  form, which was made a part of the record. [AR 10; see AR 320-321].

The Commissioner's regulations state that

> [i]f new and material evidence is submitted [to the Appeals Council], the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. . . . It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. §§ 404.970(b), 416.1470(b).

There is no merit to plaintiff's argument that the Appeals Council improperly failed to consider or discuss Roberts's evaluation. First, the Appeals Council made Roberts's opinion a part of the record and stated that it had considered that evidence. When the Appeals Council denies review, as it did in this case, the ALJ's decision stands as the final decision of the Commissioner, and only that decision (not the Appeals Council's action in denying review) is subject to judicial review. The Appeals Council is not obliged to make findings explaining its evaluation of the evidence unless it reviews the ALJ's decision and issues its own decision. See 20 C.F.R. §§ 404.967-404.981, 416.1467-416.1481; see generally 42 U.S.C. § 405(g).[1] Thus, the Appeals Council did not err in failing to articulate reasons supporting its decision that the additional evidence did not justify granting review.

Second, Roberts's evaluation postdates the ALJ's unfavorable decision, and it is unclear whether, or to what extent, the particular limitations noted on that form applied to plaintiff's condition prior to the date of the ALJ's decision. See Sanchez v. Sec'y of Health & Human Servs., 812 F.2d 509, 511-12 (9th Cir.

---

[1] A federal court reviewing the ALJ's decision considers all of the evidence in the record, including any evidence made a part of the record after submission to the Appeals Council. See Ramirez v. Shalala, 8 F.3d 1449, 1451-1452 (9th Cir. 1993). That does not mean, however, that the court has jurisdiction to review the Appeal Council's denial of review.

1987) (holding that new evidence indicating deterioration in the claimant's condition after the hearing was not material to the ALJ's decision denying benefits because it was not probative of the claimant's condition at or before his disability hearing).

Third, the Appeals Council correctly determined that Roberts's report provided no basis for changing the ALJ's decision. For one thing, her opinion was entitled to less weight than that of a treating physician or psychologist because an LMFT is not an "acceptable medical source" within the meaning of the governing regulations. The ALJ may consider information in the record from "other sources" (that is, sources other than an "acceptable medical source") but ordinarily is not required to give that information that same weight as information from an acceptable medical source. See 20 C.F.R. §§ 404.1513(a)&(d), 416.913(a)&(d)(defining an "acceptable medical source," and explaining that information from "other sources" also may be considered); Gomez v. Chater, 74 F.3d 967, 970-971 (9th Cir.) (holding that the regulations permit the Commissioner to give "less weight" to opinions from "other sources"), cert. denied, 519 U.S. 881 (1996); see generally Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *1-*6. Additionally, Roberts provided no clinical findings, objective data, diagnoses, or explanation of any kind supporting the mental functional limitations she checked off on the form. Cf. Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Fourth, the ALJ considered, discussed, and articulated reasons for rejecting a narrative "Mental Disorder Questionnaire Form" completed by Roberts on October 28, 2004. [AR 20, 287-291]. Plaintiff has not challenged the ALJ's rejection of that earlier opinion from Roberts, and therefore plaintiff has waived that issue in this action for judicial review. See Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006)(holding that the claimant waived issues because he did not raise those issues before the district court); Bergfeld v. Barnhart, 361 F.Supp.2d 1102, 1110 (D. Ariz. 2005)("A reviewing federal court will only address the issues raised by the claimant in his appeal from the ALJ's decision.")(citing Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001)). There is no "manifest injustice" in a finding a waiver in the circumstances presented. See Greger, 464 F.3d at 973 (stating that the court will only refrain from finding a waiver when a recognized exception applies and doing so is "necessary to avoid a manifest injustice")(quoting Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999)). Plaintiff was represented by

counsel during the administrative hearing, and she is represented by an experienced social security disability attorney in this action, giving her ample opportunity to raise and argue relevant issues she deems meritorious. Plaintiff also had the opportunity to file a reply to defendant's contentions in the joint stipulation.

For all of these reasons, plaintiff's argument that the Appeals Council erred in evaluating Roberts's opinion lacks merit.

**Credibility finding**

Plaintiff contends that the ALJ did not provide legally sufficient reasons for rejecting plaintiff's subjective testimony. Specifically, plaintiff argues that the ALJ improperly rejected her testimony that she has to six to seven panic attacks a month that may last several hours, can stand only 10 to 15 minutes at a time, and cannot work due to disabling pain, weakness, blurry vision, dizziness, uncontrollable shaking, and a burning sensation in her head. [JS 9-16; AR 151].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of his or her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885; see Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (enumerating factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989)(same). If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

1  The ALJ discussed plaintiff's subjective complaints, including her hearing testimony, and articulated
2  specific, clear, and convincing reasons based on substantial evidence for not finding those complaints fully
3  credible. Relying on the testimony of Dr. Malancharuvil, the medical expert, and the medical evidence of
4  record, the ALJ noted that plaintiff's subjective allegations of having the "shakes," body aches, weakness
5  in her hands, dizziness or vertigo, headaches, hyperventilation, and blurry vision were unsupported by
6  objective medical evidence. [AR 17-19, 21, 37-48, 51]. Plaintiff said that she stopped working as a school
7  bus driver in April 2003 due to vertigo. [AR 49]. However, Dr. Malancharuvil testified that plaintiff's
8  normal neurological examination was inconsistent with her allegation of vertigo, and the record did not
9  document significant or ongoing treatment for vertigo or the other physical symptoms plaintiff described.
10  [See AR 37-48]. Plaintiff testified that it was her understanding that her vertigo was due to "stress, stress
11  and life." [AR 21]. Dr. Malancharuvil explained, however, that vertigo is a neurological or inner ear
12  problem, and that anxiety may be a by-product of vertigo but did not cause that condition. [AR 38-39, 44-
13  46]. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for
14  discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

15  The ALJ also observed that plaintiff's subjective testimony was vague, internally inconsistent, and
16  inconsistent with her treatment history, the medical evidence, and her daily activities. [AR 20-21]. See
17  Tonapetyan, 242 F.3d at 1148 (stating that the ALJ can use "ordinary techniques of credibility evaluation"
18  and may rely on inconsistent statements in testimony)(citing Fair, 885 F.2d at 604 n.5); Matthews v. Shalala,
19  10 F.3d 678, 679-680 (9th Cir. 1993) (holding that the ALJ properly considered the claimant's inconsistent
20  statements as part of his credibility analysis). For example, plaintiff testified that since 2003, she had panic
21  attacks, on average, six to seven times a month that lasted for more than one hour and "can last for hours
22  at a time and continue on, you now, at nighttime until when I go to bed and when I wake up early in the
23  morning I can still have them." [AR 34]. Dr. Malancharuvil testified that plaintiff's description of her
24  symptoms was suggestive of generalized anxiety rather than recurring panic attacks, which, he explained,
25  typically dissipate after a few minutes and cannot be sustained by the body for long intervals due to their
26  intensity. [AR 20-21, 40, 44]. Dr. Malancharuvil testified that panic attacks produced an "unbearable
27  feeling" and that, if such attacks persisted notwithstanding treatment with medication, the patient ordinarily
28  would seek "more assertive treatment." [AR 44, 46].

1 As the ALJ remarked, however, plaintiff's medical records show that she was briefly treated in the
2 emergency room for anxiety on only two occasions. Both of those emergency visits occurred in 2003,
3 within a few months after plaintiff stopped working, and nearly three years before the administrative
4 hearing. [AR 21, 220-224]. Records from Community Hospital of San Bernardino show that plaintiff visited
5 the emergency room in July 2003 complaining of anxiety related to taking her first dose of the
6 antidepressant Zoloft. [AR 223-224]. She reported that after taking 50 milligrams of that medication at
7 bedtime, she experienced uncontrollable shaking, awoke three times, and felt like her head was "burning
8 and sweating." The diagnosis was "anxiety reaction associated with first dose of Zoloft." [AR 221].
9 Plaintiff was given Valium to relax her and was discharged with instructions to reduce her Zoloft dosage
10 and to take 5 milligrams of Valium at bedtime for 10 days. [AR 223-224]. Plaintiff's medical records and
11 disability reports indicate that no later than November 2003 (and perhaps as early as August 2003), Zoloft
12 had been discontinued, and plaintiff was taking Paxil and lorazepam (the generic form of Ativan), which
13 were prescribed for depression and anxiety. [AR 36, 114, 138, 177, 189, 196-198, 220].

14 In August 2003, plaintiff returned to the emergency department complaining of insomnia, extreme
15 anxiety, and feeling that her heart was "racing and pounding in her chest," without chest pain or shortness
16 of breath. [AR 220-222]. She stated that she had "been having some of these symptoms since being placed
17 on Paxil one week ago." [AR 220]. After being given Ativan intramuscularly for anxiety, plaintiff reported
18 feeling less anxious. [AR 221]. Her diagnoses were "palpitations" and "anxiety reaction." She was
19 discharged with instructions to follow up with her primary care physician. [AR 222].

20 Plaintiff was continued on Paxil in combination with lorazepam, and she remained on those
21 medications through the date of the administrative hearing close to three years later. [AR 36, 114, 138, 177].
22 The ALJ noted that plaintiff had no emergency treatment for anxiety or panic attacks after August 2003 and,
23 aside from her medications, had not pursued other psychiatric or psychological treatment on a consistent
24 basis. [AR 21]. Therefore, substantial evidence supports the ALJ's conclusion that plaintiff's subjective
25 complaints of disabling, recurrent, ongoing panic attacks were inconsistent with her treatment history. Cf.
26 Fair, 885 F.2d at 604 (holding that the ALJ permissibly considered discrepancies between the alleged
27 severity of the claimant's pain and the nature and extent of treatment obtained).

28 Similarly, the ALJ permissibly inferred that plaintiff's symptoms of anxiety or panic were reasonably

7

well controlled on Paxil and lorazepam, and that her residual symptoms could be accommodated within the nonexertional functional limitation assessed in his RFC finding. That conclusion was consistent with plaintiff's testimony that those medications helped alleviate her symptoms, as well as with Dr. Malancharuvil's testimony that plaintiff's condition was controlled with medication. [AR 38-40]. Plaintiff testified that Paxil helped calm her down in the morning, and lorazepam helped her sleep at night. [AR 36]. Asked why she did not change her medical treatment if it was not, in fact, effective in controlling her symptoms, plaintiff answered:

> Oh. You know, I really have no idea. I just think I'm used to the medicine and I like the medication and at times I'm afraid to change to a different medication because of what the side effects may [be] and I don't want to, you know, have an allergic reaction or something which I get afraid of . . .that's why I don't change medications.

[AR 38-39].

The ALJ also considered plaintiff's activities of daily living as described by plaintiff and by her friend, Kelvin Davis. That evidence showed that plaintiff took her 13-year-old daughter to school daily, rode the bus, interacted with friends, cared for her personal needs and those of her daughter, performed routine household chores, handled her own money, and said she did not have memory problems and could follow directions. [AR 21, 120-134, 154-170]. Cf. Thomas, 278 F.3d at 953, 959 (holding that the ALJ did not err in finding that the claimant's ability to live alone and perform chores such as cooking, laundry, washing dishes, and shopping undermined the credibility of her subjective complaints).

The ALJ provided legally sufficient reasons, based on substantial evidence in the record, to support his negative credibility evaluation. Therefore, plaintiff's contentions lack merit.

**Lay witness testimony**

Plaintiff contends that the ALJ erred in rejecting a third party function report completed by plaintiff's friend, Kelvin Davis, stating that plaintiff has panic attacks, cannot pay bills, does not handle stress very well, and that her condition affects her ability to stand, walk, talk, see, concentrate, and get along with others. [JS 16-18; AR 120-125].

While an ALJ must take into account lay witness testimony about a claimant's symptoms, the ALJ may discount that testimony by providing "reasons that are germane to each witness." Greger v. Barnhart,

464 F.3d 968, 972 (9th Cir. 2006)(quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.1993)). Germane reasons for rejecting a lay witness's testimony include inconsistencies between that testimony and the medical evidence, inconsistencies between that testimony and the claimant's presentation to treating physicians during the period at issue, and the claimant's failure to participate in prescribed treatment. See Greger, 464 F.3d at 971; Bayliss, 427 F.3d at 1218; Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Davis's statements were consistent with plaintiff's own subjective allegations, which the ALJ permissibly discounted. Davis, moreover, had a limited opportunity to observe plaintiff, in that he said he saw her only twice a month, when they would "talk and probably to the mall." [AR 120]. Davis also said he did not know the answer to several of the questions, including "Describe what the disabled person does from the time [she] wakes up until going to bed." [AR 120-125]. Although Davis said that plaintiff had panic attacks, "mood swings," and some difficulty handling stress, he said that she took care of her daughter, did not need reminders to take care of her personal needs, wrote reminders to take her medication on a calendar, prepared her own meals, did household chores such as laundry, mopping, and washing dishes with help from her daughter, shopped in stores, did not pay her own bills or have a savings account but could count change and use a checkbook, watched television, did crossword puzzles, talked on the phone with others, spent time with her daughter, and got along well with authority figures, such as police or landlords. [AR 120-125]. Davis also said that plaintiff's condition affected her ability to stand, walk, talk, and see, but he did not respond to a question asking him to explain how plaintiff's illness, injury, or condition limited those abilities. [AR 125-126].

The ALJ considered Davis's report along with plaintiff's written statements and testimony, but, for the reasons described above [AR 21], he permissibly concluded that those statements were not corroborated by the objective medical evidence, were internally inconsistent or inconsistent with other substantial evidence in the record, and credibly reflected limitations that were within the RFC the ALJ described. Accordingly, the ALJ provided germane reasons for his assessment of Davis's report.

**Type, dosage, and side effects of prescribed medications**

Plaintiff argues that the ALJ improperly disregarded plaintiff's statements that Paxil causes severe dizziness and lorazepam causes severe dizziness, uncontrollable shaking, drowsiness or fatigue, and blurred vision. [See JS 18-22].

In evaluating a claimant's subjective symptoms, the ALJ must consider, among other things, the type, dosage, effectiveness, and adverse side effects of any medication. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3. As explained above, the ALJ's analysis of plaintiff's subjective symptoms was proper. Referring to Paxil and lorazepam, plaintiff testified that she "like[d] the medication" and was not motivated to change it, suggesting that any side effects were tolerable. The ALJ reviewed plaintiff's medical records and noted that she was briefly treated and released after having an adverse reaction to Zoloft in July 2003. [AR 21, 223-224]. As previously noted, that medication was soon discontinued in favor of the combination of Paxil and lorazepam. Plaintiff also had an "anxiety reaction" in August 2003, soon after starting Paxil, prompting her to seek emergency room treatment. She was treated with Ativan and released, and there is no evidence of subsequent emergency visits or other treatment for medication side effects. [AR 221, 220-222]. Accordingly, there is no merit to plaintiff's contention that the ALJ improperly rejected plaintiff's complaints of adverse effects from her medications.

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**

August 5, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge